JO ANN NOONAN, APPELLANT, V. MICHAEL J. NOONAN, APPELLEE.

624 N.W.2d 314

Filed April 6, 2001.    No. S-99-1013.

Wayne E. Janssen for appellant.

Paul M. Conley for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.

## I. INTRODUCTION

Jo Ann Noonan (mother) filed a petition seeking modification of a child support order entered in the dissolution of her marriage to Michael J. Noonan (father). After a hearing, the district court found no material change in circumstances and denied the mother's request for an increase in child support. The mother appeals, contending that the district court erred in not finding a 10-percent variance in the father's child support obligation by assigning the tax exemptions for the two children to her and not the father, not including the father's overtime wages and capital gains in his gross income, including the father's student loan payments as a deduction, and improperly assigning and calculating health insurance costs as a deduction from income. The mother also argues that the modification should be retroactive to the date of filing and that she should be awarded attorney fees. Based on our de novo review, we determine that there was more than a 10-percent variation in the child support obligation of the father, and we modify the child support order retroactive to the

first day of the month following the filing date of the application for modification.

## II. BACKGROUND

The father and mother were married in 1985 and had two children. After their marriage was dissolved on August 31, 1995, certain issues were appealed to the Nebraska Court of Appeals which entered a memorandum opinion and judgment on appeal on April 1, 1997. *Noonan v. Noonan*, 5 Neb. App. xv (case No. A-95-1153, Apr. 1, 1997). The mother was awarded custody of the two children, and the father was ordered to pay child support in the amount of $740 per month and to provide health insurance for the children and was given the right to claim the children as tax exemptions. In calculating child support, the father's mandatory overtime was included as income and his student loan payments were not allowed as deductions.

The mother filed this action for modification of child support in Lancaster County on December 30, 1997. She claimed a material change in circumstances had occurred since the date of dissolution in that the father's income had increased and the application of the child support guidelines would result in a variation of more than 10 percent in the father's child support obligation. The mother also alleged that a material change in circumstances had occurred with respect to health insurance and that the responsibility for health insurance should be given to her. The mother filed a motion for temporary allowances requesting a temporary increase in child support, which the district court denied.

On September 17, 1998, the mother's attorney filed a motion to set the matter for trial, and a modification hearing was held on February 9, 1999. At the modification hearing, evidence was adduced relating to the father's income and deductions. First, the father testified as to how much is deducted from his monthly paycheck for health care expenses. The father, however, did not show how much of the health care cost is attributable to his two children.

Next, the father testified that at the time of the modification hearing, he had worked approximately 6½ years for his current employer. The father testified that his hourly rate of pay at the

time of the hearing was $19.86. He stated that he usually receives pay raises each year and that his last raise was a 2-percent increase. Additionally, the father testified that he is not required to work overtime, as he was required to do at the time the original divorce decree was entered. While the overtime hours are no longer mandatory, the father's testimony revealed that he continues to work overtime at a rate of 5 hours per pay period (every 2 weeks).

Each pay period, a percentage of the father's wages are paid in the form of company stock. The father testified that he sells the stock he receives from his employer each year. The yearly stock sales have resulted in the father's receiving capital gains income for the 2 years prior to the modification hearing. In 1996 and 1997, the father received capital gains of $979 and $888 respectively from the sale of stock he had received from his employer.

The father also has student loans that he acquired during his marriage to the mother. The father continues to make payments on the student loans in the amount of $87.32 per month. There is no evidence in the record regarding what the loans were used for during the Noonans' marriage, no evidence as to what benefit the father received from the loans, nor is there evidence as to how much of the loan is principal or interest.

The mother testified that at the time of the modification hearing, she had been working for the State of Nebraska for approximately 12 years. There was also evidence adduced at trial indicating that the mother makes approximately $9.48 per hour as a secretary.

Since the dissolution, there have been issues regarding the communication between the father and the mother with respect to health insurance for the children. The mother testified that she had difficulties filing claims because the father's employer changed insurance providers and that he failed to inform her of the changes. The father, on the other hand, testified that he gave the mother copies of the new insurance cards as soon as he discovered his employer had changed insurance providers. Because the insurance companies with whom the mother filed claims were not always the most current insurance company through the father's employer, the health care provider would turn the

matter over to a collection agency and the mother would receive collection notices from the agencies. She testified that since these occurrences, she has been unable to obtain credit cards.

The father testified that he knows nothing about when or where his children go for health care services or what claims are filed with his insurance until he receives a statement from his insurance company. He also testified that he did not receive copies of his children's past-due medical bills until the collection agencies called him. The father also claims that he is now in the habit of calling medical care providers to be sure that he is up to date with payments.

There is no evidence showing that health insurance coverage stopped at any time or that the children suffered a reduction in health care services (although, at one point, one of the children had been dropped from the father's health insurance coverage for a short period of time due to a mistake by the father's employer. The claims that had been refused were eventually paid).

On May 4, 1999, the district court entered its order finding that there was not a 10-percent change in the father's child support obligation through the application of the Nebraska Child Support Guidelines (Guidelines). The district court's calculation resulted in the father's child support obligation increasing to $805.42, just short of $814, which would be the 10-percent variation required to raise a rebuttable presumption of a material change in circumstances under the Guidelines. Thus, the district court found no material change in circumstances and denied the request for an increase in child support.

In its calculations, the district court did not include the father's overtime wages as income, reasoning that his overtime was considerably less than in past years and that his employer did not require overtime. Also, the court included a deduction for student loan payments from the father's income, reasoning that the Court of Appeals recognizes the payment of student loans as a legitimate deduction from income under the Guidelines. The worksheet attached to the district court's order, which is incorporated by reference into the order, shows that the children's income tax exemptions were assigned to the mother in the calculation and not to the father as in the original decree. The shift of exemptions was not requested by either party.

The mother's request that she be given responsibility for the children's health insurance, instead of the father, was denied by the district court. The court stated that both parties have legitimate reasons to carry the insurance and that both had given reasons why the other party would not be reliable in carrying the insurance. The district court also denied the mother's request for attorney fees.

The mother filed a motion for new trial, and the district court overruled her motion in all relevant respects. This timely appeal followed.

### III. ASSIGNMENTS OF ERROR

The mother assigns, restated and renumbered, that the district court erred in (1) failing to transfer the obligation of health insurance to her; (2) calculating child support by assigning the tax exemptions for the two children to her and not the father, not including the father's overtime wages and capital gains from the sale of stock in his gross income, including the father's student loan payments as a deduction from income, and failing to require the father to show that his health insurance deduction was fully attributable to the health insurance cost for their two children; (3) failing to award temporary child support; (4) failing to modify the child support retroactive to the date of filing for modification; and (5) failing to award her attorney fees.

### IV. STANDARD OF REVIEW

[1,2] Modification of a dissolution decree is entrusted to the discretion of the trial court, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Hartman v. Hartman, ante* p. 359, 622 N.W.2d 871 (2001); *Riggs v. Riggs, ante* p. 344, 622 N.W.2d 861 (2001). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Riggs v. Riggs, supra.*

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its

own independent conclusions with respect to the matters at issue. *Harris v. Harris, ante* p. 75, 621 N.W.2d 491 (2001).

## V. ANALYSIS

### 1. MODIFICATION OF CHILD SUPPORT

■ A party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree or a previous modification which was not contemplated when the prior order was entered. *Gammel v. Gammel*, 259 Neb. 738, 612 N.W.2d 207 (2000). Paragraph Q of the Guidelines provides:

> Application of the child support guidelines which would result in a variation by 10 percent or more, upward or downward, of the current child support obligation, due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months, establishes a rebuttable presumption of a material change of circumstances.

■ The Guidelines are applied as a rebuttable presumption, and all orders for child support shall be established in accordance with the provisions of the Guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the application of the Guidelines should be applied. *Sears v. Larson*, 259 Neb. 760, 612 N.W.2d 474 (2000).

The mother correctly argues that finding an error by the trial court in her favor would almost certainly result in a 10-percent change in the father's child support obligation, thereby raising a rebuttable presumption of a material change in circumstances. The father's current child support obligation is $740. A 10-percent increase in appellee's child support obligation would be $814 per month or more. The trial court's application of the Guidelines resulted in an increase to the father's obligation to $805.42 per month—just short of the 10-percent change. We now turn to the district court's calculation of child support.

### (a) Tax Exemptions

In the original divorce decree, which the district court took judicial notice of at the modification hearing, the father was

given the tax exemptions for the two children of the marriage. Neither party requested that the tax exemptions be reallocated in this modification action. While the district court did not specifically mention the exemptions in its written order, the court without explanation indicated on the Guidelines worksheet, and in its calculations, that the mother was given three exemptions and the father one exemption. Absent evidence and a finding to the contrary, the father should have been given three exemptions in the calculation and the mother one exemption as neither party requested the change.

Modifying a part of the original child support order absent a request by either party or a reasonable explanation for the change constitutes an abuse of discretion.

(b) Overtime and Capital Gains Income

When a court calculates the amount of child support to be paid, the court must consider the "Total Monthly Income," defined as the "income of both parties derived from all sources." Guidelines, paragraph D. See, also, Neb. Rev. Stat. § 42-364.16 (Reissue 1998). Thus, all income from employment must be included in the initial calculation, which then becomes a rebuttable presumption of appropriate support. *Dueling v. Dueling*, 257 Neb. 862, 601 N.W.2d 516 (1999).

In our review of sources of income appropriate for consideration in calculating child support, we have previously determined that regularly earned overtime wages should be included. *Stuczynski v. Stuczynski*, 238 Neb. 368, 471 N.W.2d 122 (1991). In *Stuczynski*, we stated that it is appropriate to consider overtime wages in child support calculations "if the overtime is a regular part of the employment and the employee can actually expect to earn regularly a certain amount of income for working overtime." 238 Neb. at 374, 471 N.W.2d at 126. We also noted that the level of income should not be based on income that is "speculative in nature and over which the employee has little or no control." *Id.*

It is logical to extend the principles stated in *Stuczynski* to encompass forms of income other than overtime wages. Consequently, if the evidence shows that a party actually earns or can reasonably expect to earn a certain amount of income on

a regular basis, it is appropriate to consider such income in calculating child support. Paragraph D of the Guidelines, which requires all sources of income to be included in calculating child support, requires such a rule. Therefore, if the moving party shows that the nonmoving party earns or can reasonably expect to earn a certain amount of income on a regular basis, a rebuttable presumption of including such income arises under the Guidelines.

After the moving party has met its burden of proof, the nonmoving party must produce sufficient evidence to rebut the presumption that the application of the Guidelines will result in a fair and equitable child support order before deviation from the Guidelines is appropriate. § 42-364.16; *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000); *Dueling v. Dueling, supra*. Thus, if the nonmoving party can show that the included income is speculative in nature and over which the person has little or no control, *Stuczynski v. Stuczynski, supra*, the presumption of including the income is rebutted and it shall be excluded from the calculation.

### (i) Overtime Wages

In *Stuczynski*, the husband's overtime wages at ConAgra had been included in his income as calculated by the district court. We found no abuse of discretion in the inclusion of the husband's ConAgra overtime wages because the husband could reasonably expect to earn a certain amount of overtime, his overtime was not speculative in nature, and he had some control over the income.

Conversely, in the case at hand, the district court refused to include overtime wages in calculating the father's income. We conclude, however, that the rule from *Stuczynski* extends to the case before us: If the father earns or can reasonably expect to earn a certain amount of income on a regular basis, such income should be included in the child support calculation unless the presumption is rebutted by showing that the income is speculative in nature and that it is income over which the father has little or no control.

The record shows that the father in this case does not work as many overtime hours as he did when the original decree was issued and that his overtime is no longer mandatory as it was

then. The father, however, consistently works approximately 5 hours of overtime per pay period (every 2 weeks). There was no evidence that the father expects his overtime to decrease, nor was there any evidence that the father would work fewer hours in the future. The evidence shows that the father regularly works 5 hours of overtime per pay period, and we infer from the evidence of such consistent income that the father can reasonably expect to continue working 5 hours of overtime per pay period. Thus, the mother has met her burden of showing that the overtime is a regular part of the father's income and that he can expect to regularly work 5 hours of overtime per pay period.

The father presented no evidence to rebut the presumption of including the overtime wages. On the contrary, the fact that the father consistently has 5 hours of overtime per pay period shows that the income is not speculative, and the fact that he chooses to work the overtime reveals that he has control over the income.

Therefore, the district court erred in excluding the overtime wages from the father's child support calculation. We determine that the equivalent of 5 hours of overtime per pay period is to be included in calculating the father's income.

### (ii) Capital Gains Income

As with overtime, if the mother shows that a portion of the father's wages is paid in the form of stock which is regularly sold and results in capital gains income at the end of the year, it is appropriate to consider such income under paragraph D of the Guidelines in calculating child support. Again, however, if the father rebuts the presumption by showing that the sale of the stock and the resulting capital gains income is speculative in nature and that he has little or no control over the timing of the future sales of the stock, the income should be excluded.

In the instant case, the father received stock as part of his compensation and his employer reduced his cash wages by the value of the stock. His biweekly pay stub shows that he receives 6 percent of his wages in the form of stock. The record shows that during the 2 years prior to the modification hearing, the father regularly sold the stock within months after he received it and that he consistently received capital gains income from those sales. He reported capital gains income of $979 and $888

in the 2 years prior to this action from the sale of the stock he received from his employer. Absent evidence to the contrary, the record supports the conclusion that capital gains income has been and will be a regular part of the father's income. Therefore, it is to be included in his income calculation unless the father can rebut the presumption by showing that the sale of the stock and resulting capital gains income is speculative in nature and that he has little or no control over the disposition of the stock.

There is no evidence in the record offered by the father showing why the capital gains income should not be included in the child support calculation. To the contrary, the evidence before us reveals that the father (1) receives stock as part of his compensation, (2) sells the stock each year, and (3) has consistently received capital gains income from the sales of the stock. Thus, the father has not rebutted the presumption of including the capital gains income in the child support calculation.

Therefore, the district court erred in not including the capital gains income in the child support calculation. Based on our de novo review of the record, we determine that the equivalent of $933.50 of yearly capital gains income, which is his average capital gains income from the previous 2 years, is to be included in calculating the father's income. Further, we determine that such income is to be divided by 12 and included in the calculation of the father's monthly income prior to the calculation of federal taxes. Short-term capital gains, which are gains on the sale of stock held for less than 1 year, are taxable at the same rates as ordinary income. See, I.R.C. § 1222(1) (1994); 33A Am. Jur. 2d *Federal Taxation* ¶ 11125 (2000).

### (c) Student Loan Payments

Paragraph E of the Guidelines provides a specific list of deductions from income that may be subtracted in calculating child support. Student loan payments are not specifically provided for in that list of deductions. Under the Guidelines, a deviation is permissible whenever application of the Guidelines in an individual case would be unjust or inappropriate. Guidelines, paragraph C(5). Deviations from the Guidelines also must take into account the best interests of the child. *Brooks v. Brooks,* *ante* p. 289, 622 N.W.2d 670 (2001).

In *Sears v. Larson*, 259 Neb. 760, 612 N.W.2d 474 (2000), we determined that a trial court may, in appropriate cases, deviate from the Guidelines to allow a deduction from income based on a parent's student loan payment. In order to do so, however, we held that it is the moving party's burden to prove that an application of the Guidelines without a deviation based on his or her student loan obligation would produce an unjust result. *Id.* In *Sears*, we found that the moving party had failed to meet such burden. We noted that there was nothing in the record regarding the amount of the loans, the terms of the loans, the amount attributable to principal and interest, and the amount of the loans that were used for education, child support, or other expenditures. *Id.* Therefore, we concluded that because the moving party had not proved that the district court should have deviated from the Guidelines by considering the loans, the district court did not abuse its discretion in refusing to consider the loan obligations in computing child support.

In the instant case, the district court did permit a deviation from the Guidelines by including the father's student loan payments as a deduction from income. The only evidence at the modification hearing relating to student loans was the amount of the monthly payment and the fact that the debt was incurred during the Noonans' marriage. Aside from the fact that the father's student loan payments were not allowed as deductions in the original proceedings, we note that there is nothing in the record to indicate the total amount of the father's loans, the terms of the loans, the amounts attributable to principal and interest, or what amounts were used for education, child support, or other expenses. There is also no evidence that reveals whether the loan terms allow the father to reduce the size of the monthly payment.

It was the father's burden to prove that an application of the Guidelines without a deviation based on his student loan obligation would produce an unjust result. *Id.* We find that the father failed to meet this burden and that therefore, the district court abused its discretion by including the father's student loan obligation as a deduction in calculating child support. However, our conclusion in *Sears v. Larson, supra*, remains intact—i.e., paragraph C(5) of the Guidelines allows a trial court *in an appropriate case* to deviate from the Guidelines to allow a deduction

from income based on a parent's student loan payment. Deviation was not appropriate in the case at bar because the father failed to meet his burden of proof.

### (d) Health Insurance Cost

Paragraph E(3) of the Guidelines states that "[t]he increased cost to the parent for health insurance for the child(ren) of the parent shall be allowed as a deduction from gross income. The parent requesting an adjustment for health insurance premiums must submit proof of the cost of the premium." See, also, *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999). In *Rauch*, we held that the parent claiming a deduction for health insurance must show that he or she has incurred an increased cost to maintain the coverage for the children over what it would cost to insure himself or herself. The party claiming the deduction must show how much of the health insurance premium is attributable to the children. *Id.*

In the instant case, the father has the burden of showing the amount his insurance increased due to the coverage of his two children in order for him to claim health insurance as a deduction from income in calculating child support. While there is evidence of his total health insurance cost, the record is devoid of evidence indicating how much of the father's insurance premiums are attributable to the children. In fact, at the modification hearing, the father could not remember how much his insurance premium was at all. We conclude that the district court erred in granting the father a deduction for health insurance without determining how much of the health insurance premium was attributable to the children.

### (e) Child Support Calculation

Having concluded that the district court erred in (1) shifting the tax exemptions for the two children to the mother, (2) not including the father's overtime payments and regularly earned capital gains in income, and (3) deducting the father's student loan payment and health insurance costs from income, we must now calculate the parties' child support obligation in our de novo review of the record. Because Social Security taxes and state income taxes are not deducted from capital gains income,

the father's state tax and FICA calculations are based on his monthly income excluding capital gains income, or $3,549.93. Thus, in utilizing the relevant provisions from the state and federal tax codes in effect on the date of the trial, we find, in our de novo review, that worksheet 1 is properly computed as follows:

|  | | Mother | Father |
|---|---|---|---|
|  | | Combined | |
| 1. Total monthly income from all sources (except payments received for children of prior marriages and all means-tested public assistance benefits) | | 1,643.20 | 3,627.72 |
| a. Nontaxable income (voluntary contribution to 401K) | | | 267.20 |
| 2. Deductions | | | |
| a. Taxes | Federal | 159.61 | 386.30 |
|  | State | 35.44 | 130.35 |
| b. FICA | | 125.70 | 271.57 |
| c. Health insurance | | | |
| d. Mandatory retirement | | 71.15 | |
| e. Child support previously ordered for other children | | | |
| f. Total deductions | | 391.90 | 788.22 |
| 3. Monthly net income | | 1,251.30 | 3,106.70 |
| 4. Combined monthly net income | | 4,358.00 | |
| 5. Combined annual net income | | 52,296.00 | |
| 6. Percent contribution of each parent | | 28.7% | 71.3% |
| 7. Monthly support from table 1 | | 1,436.44 | |
| 8. Each parent's share | | 412.44 | 1,024.00 |

We conclude that there has been a material change in circumstances in that the application of the Guidelines results in a variation of more than 10 percent in the father's child support obligation, see Guidelines, paragraph Q; therefore, the father's child support obligation is to increase to $1,024 per month for the parties' two minor children and, utilizing worksheet 4, to $698.70 when one child remains in the household.

## 2. TEMPORARY CHILD SUPPORT

The mother argues that the district court erred in failing to award a temporary increase in child support during the pend-

ency of this action. We disagree. The district court's determination to deny temporary support based on the affidavit supplied by the mother was not an abuse of discretion.

### 3. RETROACTIVE MODIFICATION

The mother also claims that the father's increased child support obligation should be effective as of the date that she filed for the modification. The initial determination regarding the retroactive application of the modification order is normally entrusted to the discretion of the trial court, see *Sears v. Larson*, 259 Neb. 760, 612 N.W.2d 474 (2000); however, the district court did not modify the original decree in the instant case. Therefore, the determination regarding retroactivity is left to this court based on our de novo review of the record.

We recently stated that the rule, absent equities to the contrary, should generally be that the modification of a child support order should be applied retroactively to the first day of the month following the filing date of the application for modification. *Riggs v. Riggs, ante* p. 344, 622 N.W.2d 861 (2001). This court reiterated that the main principle behind the Guidelines is to recognize the equal duty of both parents to contribute to the support of their child in proportion to their respective net incomes. *Id.* See, also, Guidelines, paragraph A. The paramount concern and question in determining child support, whether in the initial marital dissolution action or in the proceedings for modification of decree, is the best interests of the child. *Riggs v. Riggs, supra.* We also observed that the child and custodial parent should not be penalized, if it can be avoided, by the delay inherent in our legal system. *Id.*

In the instant case, the mother filed her petition seeking a modification of the decree and an increase of child support on December 30, 1997. During discovery in this action, the mother had interrogatories sent to the father on March 27, 1998. The mother testified that on May 27, she asked her attorney to send a letter to the father's attorney requesting answers to the interrogatories. On June 22, the mother directed her attorney to file a motion to compel answers to the interrogatories, and a hearing was set for July 10. The interrogatories were answered on July 6, 1998, 4 days prior to the hearing on the motion to compel and more than 3

months after the interrogatories were sent. The mother testified that she thought the answers to interrogatories regarding mandatory retirement were incorrect, so she sent follow-up requests for admissions to clear up issues regarding whether the father's retirement contributions were mandatory or voluntary.

The requests for admissions were sent on July 18, 1998, and were objected to by the father's attorney. The requests were eventually answered on September 11, and the father admitted that his employer does not have mandatory retirement, despite statements to the contrary in the interrogatories.

On September 16, 1998, the mother's attorney filed a motion to set the matter for trial, and a modification hearing was eventually held on February 9, 1999. On May 4, the district court entered its order denying the mother's request for an increase in child support. The mother filed a timely motion for new trial, which was denied, and she then promptly filed an appeal to this court.

We determine that the equities involved in this case require that the modified support obligation become effective as of January 1, 1998, the first day of the month following the date of the filing of the mother's petition for modification. The record reveals no delay caused by the mother, and the children in this case should not be penalized by the delay inherent in the legal process, nor should the noncustodial parent gratuitously benefit from the delay. See *Riggs v. Riggs, supra*. Given the father's dilatory actions in this matter and the fact that he is earning sufficient income to pay the increased child support, we find that the increase in his child support obligation should be retroactive to January 1, 1998.

### 4. ATTORNEY FEES

The mother's next assignment of error is that the district court abused its discretion in not awarding attorney fees in the instant action. In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Riggs v. Riggs, ante* p. 344, 622 N.W.2d 861 (2001).

Obviously, the mother did not prevail in the lower court, and the court no doubt took that into consideration when deny-

ing her attorney fees at the district court level. Customarily in dissolution cases, attorney fees and costs are awarded only to prevailing parties or assessed against those who file frivolous suits. *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000). In our de novo review, we do give weight to the fact that the mother prevailed in obtaining an increase in child support. Additionally, Neb. Rev. Stat. § 25-824(4) (Reissue 1998) provides that attorney fees are available if the court finds that "an attorney or party unnecessarily expanded the proceedings by other improper conduct, including, but not limited to, abuses of civil discovery procedures."

Based on the father's abuse of the discovery process outlined above and the fact that the mother eventually prevailed in obtaining an increase in child support, we conclude in our de novo review that the mother should have been awarded fees for her attorney's services at the trial court level. While the record reveals evidence of substantial legal services on behalf of the mother at the trial court level, we consider the retroactive nature of the increased child support when awarding attorney fees in the instant matter. Giving consideration to the above-stated equities, we order the father to pay the sum of $1,200 for the mother's attorney fees in the district court.

## 5. HEALTH INSURANCE OBLIGATION

Finally, the district court refused to transfer the health insurance obligation to the mother because each party had introduced evidence why the other would be unreliable in providing health insurance and why each wanted to be responsible for the insurance obligation. When evidence is in conflict, we will consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts over another. *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999). We find in our de novo review of the record that the district court did not abuse its discretion in refusing to reassign the health insurance obligation.

## VI. CONCLUSION

We, therefore, conclude that the district court abused its discretion in (1) shifting the tax exemptions of the two children, (2)

not including the father's overtime pay and regularly earned capital gains and income, (3) deducting the father's student loan payments and health insurance cost from income, and (4) ultimately denying the mother's request for an increase in child support and denying her request for an attorney fee at the trial level. We find that the district court did not abuse its discretion in failing to award a temporary increase in child support during the pendency of this action and in refusing to reassign the parties' health insurance obligation. Therefore, we modify the father's child support obligation, effective January 1, 1998, to $1,024 per month for the parties' two minor children and $698.70 per month when one child remains in the household. The father is ordered to pay the sum of $1,200 for the mother's attorney fees in the district court. The judgment of the district court is affirmed as modified.

AFFIRMED AS MODIFIED.

MILLER-LERMAN, J., not participating.