Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/31/2017 09:20 AM CDT

Keith M. Roberts, appellant and
cross-appellee, v. Diana S. Roberts,
appellee and cross-appellant.

___ N.W.2d ___

Filed October 24, 2017.    No. A-16-1104.

1. **Modification of Decree: Child Support: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. The same standard applies to the modification of child support.

2. **Modification of Decree: Attorney Fees: Appeal and Error.** In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion.

3. **Child Support.** The primary concern in determining child support is the best interests of the children.

4. **Child Support: Rules of the Supreme Court.** The main principle behind the Nebraska Child Support Guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective incomes.

5. ____: ____. In general, child support payments should be set according to the Nebraska Child Support Guidelines, which compute the presumptive share of each parent's child support obligation.

6. **Actions: Equity: Child Support: Rules of the Supreme Court.** The Nebraska Supreme Court has favored a flexible approach to determining a parent's income for child support proceedings because such actions are, despite the Nebraska Child Support Guidelines, equitable in nature.

7. **Child Support.** While a court calculating child support is permitted to add in-kind benefits derived from an employer to a party's income, inclusion of such benefits is not required.

8. **Alimony: Child Support.** Alimony is not an item of income in calculating child support.

9. **Alimony: Child Support: Rules of the Supreme Court.** The language in Neb. Ct. R. § 4-213 of the Nebraska Child Support Guidelines clearly provides that child support obligations are to be calculated prior to the calculation of alimony.

10. **Child Support.** The use of earning capacity in calculating child support is useful when it appears that the parent is capable of earning more income than is presently being earned.

11. **Modification of Decree: Child Support: Proof.** A party can modify a prior child support order by showing that there has been a material change in circumstances since the entry of the court's prior order.

12. **Child Support: Rules of the Supreme Court.** Generally, parties' child support obligations should be set according to the provisions set forth in the Nebraska Child Support Guidelines.

13. ____: ____. A court may deviate from the Nebraska Child Support Guidelines, but only if it specifically finds that a deviation is warranted based on the evidence.

14. ____: ____. Without a clearly articulated justification, any deviation from the Nebraska Child Support Guidelines is an abuse of discretion.

15. **Equity: Modification of Decree: Child Support: Time.** Absent equities to the contrary, the general rule is that the modification of a child support order should be applied retroactively to the first day of the month following the filing day of the application for modification.

16. **Child Custody: Time.** A child and custodial parent should not be penalized, if it can be avoided, by the delay inherent in our legal system.

17. **Modification of Decree: Time: Appeal and Error.** The initial determination regarding the retroactive application of a modification order is entrusted to the discretion of the trial court and will be affirmed on appeal absent an abuse of discretion.

18. **Child Support: Time.** There are circumstances to take into consideration wherein a noncustodial parent may not have the ability to pay retroactive support in addition to meeting current support obligations.

19. **Divorce: Attorney Fees: Costs.** Customarily in dissolution cases, attorney fees and costs are awarded only to prevailing parties or assessed against those who file frivolous suits.

Appeal from the District Court for Douglas County: Marlon A. Polk, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Donald A. Roberts and Justin A. Roberts, of Lustgarten & Roberts, P.C., L.L.O., for appellant.

Lindsay Belmont and Angela Dunne, of Koenig Dunne, P.C., L.L.O., for appellee.

Inbody, Pirtle, and Riedmann, Judges.

Riedmann, Judge.

## I. INTRODUCTION

Keith M. Roberts appeals from an order entered by the district court for Douglas County that modified his child support obligation to Diana S. Roberts following the dissolution of the parties' marriage. Diana cross-appeals from the same order. For the reasons that follow, we affirm in part and in part reverse, and remand.

## II. BACKGROUND

Keith and Diana were married on April 6, 1991. They had two children together, born in 2002 and 2005. A decree of dissolution was entered by the district court in August 2014. At the time of the parties' divorce, Keith was employed as the "resident agent in charge for Homeland Security Investigation" in Omaha, Nebraska, and his total monthly income was $12,281. Diana was unemployed, and the parties stipulated to an annual earning capacity in the amount of $20,000, which resulted in an imputed monthly income of $1,666.67.

Under the terms of the dissolution decree, Keith was ordered to pay $1,866 per month in child support for two minor children and $1,311 per month when only one child remained a minor. The decree also ordered Keith to pay $3,000 per month in alimony to Diana for a period of 84 months.

The parties were awarded joint legal custody of their children, and Diana was awarded primary physical custody, with Keith to have parenting time pursuant to the terms of the parties' parenting plan. The parenting plan provided that Keith was to have custody of the children every Tuesday from 3 to

8 p.m. and on alternating weekends, commencing Friday after school and concluding Sunday evening. The parenting plan provided that during the summer, Keith was to have custody each Tuesday afternoon through Thursday morning and alternating weekends. Keith and Diana were both ordered to pay "for their own clothing, utilities, food, travel expenses, and living expenses for the minor children when they are in his or her [custody]."

Following entry of the dissolution decree, Keith retired from his employment and began a new position as a personal service contractor for the U.S. Department of State on or around September 27, 2015. Subsequent to his retirement from federal government employment, Keith made a claim for a portion of his federal retirement benefit. Diana made a claim for a portion of this benefit as Keith's former spouse. Diana was to receive a monthly payment of $2,999.72 out of Keith's monthly gross annuity of $8,743, from which the cost of her survivor benefit was then deducted. Diana testified that she was to receive a monthly payment of $2,337.52. Both parties were also to receive a retroactive payment for annuity benefits prior to the commencement of their monthly payments. Keith testified that he received a lump-sum payment of approximately $8,000 and Diana was to receive a payment of $9,116.33.

Keith's new position working with the Department of State required him to relocate to Ankara, Turkey, which he did in November 2015. Keith testified that he usually returns to the United States at least twice per year while escorting foreign dignitaries, although he does not get to choose when those occasions occur. He stated that his trips to the United States typically last "approximately a month." Keith testified that he has been able to visit his two children by taking vacation while he was in the United States on business. For him to return to the United States from Turkey to visit them, Keith estimated that it would cost approximately $3,000 per week, and the expenses related to activities with the children would be an additional $1,000.

As a personal service contractor, Keith has a current salary paid by the Department of State. His annual base salary is $136,833. Keith testified that he also receives a cost-of-living allowance (COLA) and post differential pay while living in Turkey but not when he returns to the United States on travel. Keith is eligible to receive "danger pay," which would replace his post differential pay. Although he testified that he had received an email alerting him to the possibility of receiving danger pay in the future due to changes in security, he had not yet received any danger pay; nor did he know if or when it would be implemented.

In Turkey, Keith resides in an apartment that is rented and paid for by "[t]he embassy." Keith testified that he does not receive a housing allowance or a living quarters allowance and that he does not know how much his rent costs the government.

Diana filed her second amended complaint for modification in January 2016, alleging that a material change in circumstances existed warranting a change in child support. In support of her motion, she stated that Keith had retired from his federal government employment, begun receiving retirement pay, and accepted a position in Turkey for which he received income and that Keith's gross monthly income had increased such that, in applying the Nebraska Child Support Guidelines, there was an increase in child support greater than 10 percent. Diana alleged that while living abroad, Keith had not exercised his parenting time, and that as a result, her expenses for caring for the parties' children had increased. Diana also requested an award of attorney fees.

Trial was held in May 2016. Diana testified at trial, and Keith's deposition was offered into evidence in lieu of live testimony because he was out of the country. The district court entered its order of modification in November 2016, finding that a substantial and material change in circumstances had occurred since entry of the dissolution decree due to "a change in the parties' incomes and [Keith's] relocation to

Turkey that justifies an increase in [Keith's] child support obligation to [Diana]." The court adopted Keith's proposed calculations of child support, which resulted in a payment of $1,935 per month for two children and $1,411 for one child. The court then included an additional support worksheet pursuant to Neb. Ct. R. § 4-203(C) (rev. 2011) of the Nebraska Child Support Guidelines for incomes greater than $15,000 monthly. Pursuant to those calculations, the court increased Keith's child support obligation to $2,022 per month for two children and $1,498 for one child.

The district court determined that an upward deviation from the guidelines was "in the best interests of the minor children." Accordingly, the court ordered Keith to pay child support in the amount of $2,500 per month for two children, which was an upward deviation of $478, and $1,851 per month for one child, which was an upward deviation of $353. The court ordered that each party was to pay his or her own attorney fees. Keith now appeals, and Diana cross-appeals.

## III. ASSIGNMENTS OF ERROR

Keith assigns, restated, that the district court erred in granting Diana's second amended complaint for modification of child support. On cross-appeal, Diana assigns, restated, that the district court abused its discretion in (1) adopting Keith's child support calculation and thereby erring in calculating the parties' respective incomes, (2) denying her request to retroactively modify the award, and (3) failing to award her attorney fees.

## IV. STANDARD OF REVIEW

[1] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015). The same standard applies to the modification of child support. *Id*.

[2] In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

## V. ANALYSIS

### 1. Calculation of Parties' Incomes

Diana argues that the district court abused its discretion in adopting Keith's proposed child support calculations and thereby erred in calculating each party's respective income. She claims that the district court did not include all of Keith's sources of income and improperly attributed income to her that should not be considered for purposes of child support.

### (a) Keith's Income

Diana claims that the district court erred in not including all of Keith's sources of income. Specifically, she alleges that the court should have included Keith's housing allowance as well as his danger pay in the place of Keith's post differential pay.

[3-5] The primary concern in determining child support is the best interests of the children. See *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004). The main principle behind the Nebraska Child Support Guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective incomes. *Gangwish v. Gangwish, supra*. In general, child support payments should be set according to the Nebraska Child Support Guidelines, which compute the presumptive share of each parent's child support obligation. *Gangwish v. Gangwish, supra*.

[6,7] Pursuant to Neb. Ct. R. § 4-204 (rev. 2015) of the Nebraska Child Support Guidelines, a court is to consider the total monthly income of both parties, which is defined as "income of both parties derived from all sources, except all

means-tested public assistance benefits which includes any earned income tax credit and payments received for children of prior marriages." The Nebraska Supreme Court has favored a flexible approach to determining a parent's income for child support proceedings because such actions are, despite the guidelines, equitable in nature. *Gangwish v. Gangwish, supra*. While a court is permitted to add "'in-kind'" benefits derived from an employer to a party's income, inclusion of such benefits is not required. *Id.* at 911, 678 N.W.2d at 514.

Here, Diana argues that Keith's income should have included an annual housing allowance of $28,400. Diana derived this number from the Department of State's website that lists housing allowances for various locations, including Ankara. According to those listings, the housing allowance for employees living without family in Ankara is $28,400 per year. Diana argues that because Keith is not required to pay his own rent and in-kind benefits may be included as income, the district court abused its discretion in failing to attribute this amount to Keith.

However, Keith testified that he does not personally receive a housing allowance and that "the embassy rents my apartment and pays for it." He stated that he does not know what the actual cost of his apartment is to the government. Keith testified that he is not familiar with the listings from which Diana arrived at the amount of $28,400 per year. Furthermore, while in-kind benefits such as a housing allowance are permitted to be considered in the determination of income, their inclusion is not required; whether or not to include such benefits is left to the discretion of the trial court. Given this discretion, Keith's testimony that he does not receive a housing allowance, and the lack of evidence as to the value of Keith's housing, we find that the district court did not err in excluding the housing allowance as part of Keith's income.

Next, Diana claims that the district court should have included danger pay in its determination of Keith's income in the place of post differential pay. She argues that Keith

received an email on the day of his deposition regarding events in southern Turkey that increased the danger of living in the country and triggered additional danger pay in the amount of $1,710 per month. Diana asserts that the district court erred in not including this amount as part of Keith's income.

While Keith did testify to the receipt of an email alerting him to the possibility of receiving danger pay in the future, as of the date of his deposition he had not received any danger pay and did not know if or when danger pay would be implemented in the future. Keith testified that he had no control over whether danger pay was granted. We find no evidence in the record that Keith did in fact receive danger pay at any point. Instead, the record supports the fact that Keith received post differential pay, which was properly included in the calculation of his income. Therefore, we find no error in the district court's exclusion of danger pay in the determination of Keith's income.

Diana also argues that the district court erred in its calculations determining Keith's retirement annuity and COLA. She claims that the amount of monthly income attributed to Keith's retirement annuity should be $6,405 rather than $5,744 and that Keith's COLA should be $352 rather than $293. We disagree.

Diana claims that Keith's retirement annuity should have been calculated as $6,405 per month. She arrives at this number by subtracting the amount that she receives from the annuity—$2,337.85—from Keith's total monthly annuity, which is $8,743. However, as stated in the letters from the U.S. Office of Personnel Management, the total amount of the monthly payment to Diana from the annuity is $2,999.72. Diana receives less than that full amount because her portion of her survivor benefit is withheld, resulting in a net payment to her of $2,337.85. Subtracting the full amount taken out of Keith's annuity on behalf of Diana results in a net amount of $5,744 that Keith receives each month. This is the same amount used by the district court. We find no error in this calculation.

Diana also claims that the district court should have attributed Keith's monthly income from his COLA as $352, rather than $293. She argues that this amount should be attributed to all 12 months of the year because Keith's return to the United States for 2 months each year (for which he does not receive COLA) is speculative.

Keith testified that he receives his COLA only when he is in Turkey. He testified that he usually returns to the United States at least twice a year while escorting foreign dignitaries and that his trips have typically lasted approximately 1 month each. During those periods, he receives no COLA. The district court relied on this testimony in finding that Keith receives COLA pay for 10 months of the year at the rate of $352 per month. Dividing that amount evenly across the 12 months in a year, the court reached the amount of $293 per month in COLA pay. We find no error in this calculation. The district court relied upon Keith's testimony that he typically returns to the United States for a total of approximately 2 months each year, during which he does not receive his COLA. The court then appropriately divided the COLA that he does receive evenly to reach the amount of $293 per month. Accordingly, we find no error in the district court's calculation of Keith's income.

### (b) Diana's Income

Diana argues that the district court erred in calculating her total monthly income. She claims that her income should not have included her alimony or earning capacity and should have consisted solely of the amount she receives from Keith's retirement annuity. For the reasons that follow, we agree that the district court erred by including alimony when calculating Diana's income.

[8,9] In the original decree, Diana was awarded monthly alimony of $3,000 for 84 months. The district court included this amount in its calculation of Diana's total monthly income. However, alimony is not an item of income in calculating child support. See *Gallner v. Hoffman*, 264 Neb. 995, 653

N.W.2d 838 (2002). Neb. Ct. R. § 4-213 of the Nebraska Child Support Guidelines states that the "guidelines intend that spousal support be determined from income available to the parties *after* child support has been established." (Emphasis supplied.) In *Gallner v. Hoffman*, the court stated that this language provided clearly that "child support obligations are to be calculated prior to the calculation of alimony." 264 Neb. at 1003, 653 N.W.2d at 845. It logically follows that if child support is calculated before alimony, such alimony should be excluded when calculating income in a modification proceeding.

Accordingly, we find that the district court erred as a matter of law by including alimony in its calculation of Diana's total monthly income and that Diana's monthly income should be reduced by $3,000.

Diana also claims that the district court abused its discretion by including her earning capacity in the calculation of her income. She argues that because Keith retired subsequent to the entry of the dissolution decree and she now receives a portion of his retirement annuity, that amount should replace her imputed earning capacity of $1,666 per month. Diana asserts that it is unjust to add her earning capacity on top of the amount that she is actually receiving as income through the annuity.

[10] Section 4-204 of the Nebraska Child Support Guidelines states that "earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities." The Nebraska Supreme Court has held that the use of earning capacity in calculating child support is useful when it appears that the parent is capable of earning more income than is presently being earned. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013).

In the parties' dissolution decree, they stipulated to an earning capacity of $20,000 per year for Diana, which results in $1,666 per month. In the modification action, the district

court adopted the same figure as Diana's imputed earning capacity.

Diana testified that at the time of trial, she was 53 years old and had no physical barriers to obtaining employment. She was last employed in 1992, and she had received an associate's degree in fashion merchandising. Diana testified that she assumed she could presently earn minimum wage based on her extended time out of the workforce and that she had not actively pursued employment following entry of the dissolution decree.

We find nothing in the record to suggest that Diana's earning capacity has changed in any way since she and Keith divorced. While Diana is correct that Keith has since retired from the position he held at the time, we find nothing to indicate that she is incapable of earning an income. Therefore, we find no abuse of discretion in the district court's inclusion of her imputed earning capacity in the calculation of her income.

Because the court erroneously included alimony when calculating Diana's income, we reverse the district court's order and remand the cause for recalculation of child support to exclude Diana's monthly alimony.

## 2. Deviation

Keith argues that the district court erred in granting Diana's second amended complaint for modification of child support. He claims that there was not sufficient evidence presented to deviate upward from the amounts set forth in the child support guidelines and that the court did not specify its reasons or set forth its calculations to justify its upward deviation. Furthermore, Keith argues that it was error to impose an upward deviation based upon Diana's speculative evidence of increased expenses caused by his failure to exercise his parenting time. For the reasons that follow, we agree that the district court failed to sufficiently state its reasons in granting the upward deviation.

[11-14] A party can modify a prior child support order by showing that there has been a material change in circumstances since the entry of the court's prior order. *Gress v. Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007). Generally, parties' child support obligations should be set according to the provisions set forth in the Nebraska Child Support Guidelines. *Gress v. Gress, supra*. A court may deviate from the guidelines, but only if it specifically finds that a deviation is warranted based on the evidence. *Gress v. Gress, supra*. Without a clearly articulated justification, any deviation from the guidelines is an abuse of discretion. *Gress v. Gress, supra*.

Section 4-203 of the Nebraska Child Support Guidelines articulates the instances in which deviations are permitted. Relevant here are § 4-203(C) and (E), which provide, respectively, that deviations are permissible when the total net income exceeds $15,000 monthly and that they are permissible when application of the guidelines in an individual case would be unjust or inappropriate. Section 4-203 of the guidelines further states that "[i]n the event of a deviation, the reason for the deviation shall be contained in the findings portion of the decree or order, or worksheet 5 should be completed by the court and filed in the court file."

Here, the district court adopted Keith's child support calculations, which resulted in a payment by Keith of $1,935 per month for two children. As part of those calculations, the district court found that the parties' combined monthly net income was $16,275.63. The court then attached an additional worksheet to its order, pursuant to § 4-203(C) of the guidelines, for incomes over $15,000 monthly. Pursuant to those calculations, the court raised Keith's child support contribution from $1,935 to $2,022 per month. However, the court ultimately ordered Keith to pay $2,500 per month for two children, which it stated constituted an upward deviation of $478.

In its order, the district court stated that it found that an upward deviation was in the children's best interests, but it did not specifically explain its reasoning for such a finding.

In finding that a substantial and material change in circumstances existed, the court referenced the change in the parties' incomes and Keith's relocation to Turkey as justification for an increase in his child support obligation, but the court did not explain its reasoning in finding that an upward deviation beyond what was provided for under the guidelines was necessary. Furthermore, the court did not attach worksheet 5, the deviations worksheet, to its order.

In adopting Keith's child support calculations, the district court included Diana's alimony as part of her income. Using this figure, the court found that the parties' combined monthly net income was $16,275.63. However, as discussed above, the inclusion of alimony was in error, and Diana's total income should be reduced by $3,000. Using the correct amount for Diana's income leads to a combined monthly net income of $13,275.63, which is less than the $15,000 net income for which § 4-203(C) permits a deviation. Because we find that the parties' monthly net income is not greater than $15,000, we find that the district court's increase of Keith's child support under the additional § 4-203(C) worksheet was an abuse of discretion.

Furthermore, the district court did not clearly articulate its reasoning for the additional upward deviation of $478. The order simply stated that the court found such a deviation was in the children's best interests. The court did not specifically explain why it found that an upward deviation was justified; nor did it set forth its reasoning for granting the deviation in the amount that it did. Pursuant to § 4-203 of the guidelines, a court must either state its reason for the deviation in its findings or complete and file worksheet 5. Here, the district court did neither. Therefore, we find that the district court abused its discretion in granting the deviation. We reverse the district court's order establishing the parties' child support obligations and remand the cause for recalculation. If, after calculating the parties' child support obligations using the corrected income, the district court finds that a deviation is justified, it

shall specifically state its reason for such a finding in its order
or complete and file worksheet 5.

### 3. Retroactivity of Modification

Diana argues that the district court abused its discretion
in denying her request to retroactively modify the change in
Keith's child support obligation. She claims that because she
filed her initial complaint seeking to modify the dissolution
decree on August 31, 2015, the modification should have been
ordered retroactive to September 1, which was the first day
of the month following the filing of her application. Diana
asserts that denying such a retroactive award has the effect of
penalizing her and the children for the length of time that was
required to resolve the matter. She further argues that there was
no evidence that such retroactive application would unduly cre-
ate financial hardship for Keith. We agree.

[15-18] The Nebraska Supreme Court has held that absent
equities to the contrary, the general rule is that the modifica-
tion of a child support order should be applied retroactively
to the first day of the month following the filing day of the
application for modification. *Riggs v. Riggs*, 261 Neb. 344,
622 N.W.2d 861 (2001). The child and custodial parent should
not be penalized, if it can be avoided, by the delay inherent in
our legal system. *Id*. The initial determination regarding the
retroactive application of a modification order is entrusted to
the discretion of the trial court and will be affirmed on appeal
absent an abuse of discretion. *Id*. However, there are circum-
stances to take into consideration wherein the noncustodial
parent may not have the ability to pay retroactive support in
addition to meeting current support obligations. See *id*.

In this case, Diana filed her initial application seeking
modification on August 31, 2015, and the order of modification
was entered more than 1 year later, on November 15, 2016.
In the order of modification, the district court denied Diana's
request to retroactively modify the award. However, the court
did not state any reason for its denial. Furthermore, we note

that the record indicates that a retroactive award would not create financial hardship for Keith. In particular, we note his testimony that he received a lump-sum payment of approximately $8,000 from his retirement annuity. Given the rule set out in *Riggs v. Riggs*, 261 Neb. at 356, 622 N.W.2d at 870, and the apparent absence of any "equities to the contrary" in the record, we find that the district court abused its discretion in denying Diana's request to order the child support modification retroactive to September 1, 2015.

## 4. ATTORNEY FEES

Diana claims that the district court abused its discretion in denying her request for attorney fees. She argues that the record shows that Keith is a high-wage earner and has the ability to pay both his attorney fees and hers. Diana claims that she has incurred over $20,000 in attorney fees litigating this modification action and does not have the ability to pay those fees. She also argues that Keith took actions that contributed to her high legal expenses, such as failing to timely respond to discovery requests and filing an action related to custody that he later dismissed. Therefore, Diana asserts that an award of attorney fees is appropriate. We disagree.

[19] Customarily in dissolution cases, attorney fees and costs are awarded only to prevailing parties or assessed against those who file frivolous suits. *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001). In an action for modification of a dissolution decree, the award of attorney fees is left to the discretion of the trial court and, on appeal, is reviewed de novo on the record and will be affirmed absent an abuse of discretion. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

In this case, we note that Diana did prevail in obtaining an increase in child support in the trial court. However, the trial court did not award Diana attorney fees and ordered both parties to pay their own legal expenses. Furthermore, the fact that Keith may be considered a high-wage earner does

not in and of itself justify ordering him to pay both parties' legal expenses. Therefore, we find that the district court did not abuse its discretion in denying Diana's request for attorney fees.

## VI. CONCLUSION

Based on our review of the record, we find that the district court erred in including alimony in its calculation of Diana's income and that the court abused its discretion in granting an upward deviation from the child support guidelines without explanation and in failing to order retroactive modified support. We find no abuse of discretion in the court's denial of attorney fees. Therefore, we affirm in part and in part reverse, and remand the cause for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.