Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/10/2017 08:10 AM CDT

MICHELLE R. DRABBELS, APPELLEE AND
CROSS-APPELLANT, v. DARREN W. DRABBELS,
APPELLANT AND CROSS-APPELLEE.

___ N.W.2d ___

Filed October 3, 2017.    No. A-16-1046.

1. **Divorce: Child Support: Appeal and Error.** An appellate court's review in an action for dissolution of marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding child support.

2. **Judges: Words and Phrases.** A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result.

3. **Evidence: Appeal and Error.** When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

4. **Child Support: Insurance: Proof.** In calculating a party's child support obligation, a deduction shall be allowed for the monthly out-of-pocket cost to the parent for that particular parent's health insurance so long as the parent requesting the deduction submits proof of the actual cost incurred for health insurance.

5. **____: ____: ____.** In calculating a party's child support obligation, the increased cost to a parent for health insurance for the child shall be prorated between the parents; the parent paying the premium receives a credit against his or her share of the monthly support, provided that the parent requesting the credit submits proof of the cost of health insurance coverage for the child.

6. **Child Support.** In calculating child support, the total monthly income of a parent should include earnings derived from all sources.

7. **____.** While a court is allowed to add in-kind benefits, derived from an employer or other third party, to a party's income, a court's findings

regarding an individual's level of income should not be based on the inclusion of income that is entirely speculative.

8. **Child Support: Pensions.** In calculating child support, a parent may receive a deduction for contributions to a retirement plan.

Appeal from the District Court for Sheridan County: Travis P. O'Gorman, Judge. Affirmed as modified, and cause remanded with direction.

Jerrod P. Jaeger, of Jaeger Law Office, P.C., L.L.O., for appellant.

Andrew W. Snyder, of Chaloupka, Holyoke, Snyder, Chaloupka & Longoria, P.C., L.L.O., for appellee.

Moore, Chief Judge, and Bishop and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

Darren W. Drabbels appeals, and Michelle R. Drabbels cross-appeals, from the decree of dissolution entered by the district court for Sheridan County, which decree dissolved their marriage, awarded them joint legal custody of their daughter, awarded Michelle physical custody of their daughter, and ordered Darren to pay child support. At issue in this appeal is the district court's calculation of Darren's child support obligation. Upon our review, we conclude that the district court erred in calculating Darren's monthly income and in failing to allocate childcare expenses between the parties. As a result, we must modify that portion of the decree which concerns child support. In addition, we must remand the cause to the district court to enter an order allocating childcare expenses between the parties.

## BACKGROUND

Darren and Michelle were married on September 26, 2009. There was one child born during the marriage; a daughter, born in January 2013. The parties separated in October 2014.

Michelle filed a complaint for dissolution of the marriage on April 27, 2015. In the complaint, she specifically asked that the parties' marriage be dissolved, that their marital assets and debts be equitably divided, and that she be awarded custody of their daughter and child support.

On December 28, 2015, the district court entered a temporary order which awarded Michelle physical and legal custody of the parties' daughter pending the dissolution trial. The temporary order also awarded Michelle $500 per month in child support.

Trial was held on June 28 and August 17, 2016. During the trial, the evidence presented by both parties focused primarily on custody of the parties' daughter, the division of marital property, and the proper amount of child support to be paid by Darren. In this appeal, neither party challenges the district court's decisions concerning custody or the division of property. As such, our recitation of the evidence presented at the trial focuses on only that evidence relating to child support and childcare expenses.

Michelle testified that she is currently employed as a dental office manager. She has been employed there since 2011 and earns $20 per hour. Michelle testified that she receives certain benefits as a result of her employment, including free dental care, the option to obtain health insurance, and a "401K where [the company] matches 3 percent of what I put in there." Michelle indicated that Darren currently provides their daughter with health insurance through his employer. Michelle testified that while she could provide health insurance for their daughter, she believes that it would be best for their daughter to remain on Darren's insurance plan. Michelle also indicated that their daughter attends daycare and that she and Darren have been splitting the cost of this daycare since at least January 2016. Michelle testified that she wanted this arrangement to continue.

Darren testified that he is currently employed by a public power district as a journeyman lineman. As a part of

his employment, he is a member of a union. In 2016, he earned $33.35 per hour. In addition to his hourly wages, he receives certain "fringe benefits" as a result of his employment. These benefits include health insurance and retirement benefits. Darren offered evidence which showed that in 2016, his employer paid $1,935.52 per month for Darren's and his daughter's health insurance. Darren testified that this insurance was paid for entirely by his employer. He does not pay anything toward the insurance plan, and nothing is deducted from his paycheck to pay for this benefit. However, Darren also testified that if the cost of his insurance increases, his hourly rate of pay may be affected. Similarly, Darren offered evidence which showed that in 2016, his employer paid $12,555.61 in retirement benefits for him. Darren testified that these retirement benefits were paid for entirely by his employer and that nothing is deducted from his paycheck to pay for this benefit. Other "fringe benefits" received by Darren in 2016 include the opportunity to earn overtime, a "Safety Award" of $107.63, and paid holiday, vacation, and sick leave. However, Darren testified that the overtime and the safety award are not "guaranteed."

Darren testified that his monthly income should be calculated by using his hourly wage of $33.35 and adding in the amount that his employer pays for health insurance. He also indicated that when the court calculates his child support obligation, he should receive a deduction for his health insurance premiums and a credit for his daughter's health insurance premiums.

After trial, the district court entered a decree of dissolution. In the decree, the court ordered Darren to pay child support in the amount of $880 per month. In calculating Darren's child support obligation, the court indicated its finding that Darren's monthly income totals $7,716. The court did not give Darren a deduction or a credit for the health insurance premiums, but did give him a deduction of $375 for his contributions to a retirement account. The court indicated its finding that Michelle's

monthly income totals $3,466 per month. The court did not give Michelle a deduction for any contribution to a retirement account. The court also did not discuss the allocation of child-care expenses in the decree.

After the court entered the decree of dissolution, Darren filed a timely motion to alter or amend, requesting that the court reconsider the calculation of his monthly income for child support purposes. A hearing was held on this motion. At this hearing, Michelle specifically indicated that she had not filed any motions after the decree was entered. However, she offered into evidence copies of recent paystubs and copies of recent daycare bills. Ultimately, the district court denied Darren's motion to alter or amend and did not make any changes to its child support calculation.

Darren appeals, and Michelle cross-appeals.

## ASSIGNMENTS OF ERROR

On appeal, Darren argues that the district court erred in calculating his monthly income for child support purposes. Specifically, he asserts that the district court failed to include in its calculations a deduction and a credit for the health insurance premiums he pays for himself and his daughter.

On cross-appeal, Michelle also argues that the district court erred in calculating Darren's monthly income. Specifically, she asserts that the district court erred in failing to include all of Darren's "fringe benefits" in the calculation of his monthly income; in determining the portions of Darren's income which are taxable and nontaxable; and in including a deduction for Darren's retirement contributions. In addition, Michelle argues that the district court erred in calculating her monthly income because the court failed to include a deduction for her retirement contributions. Finally, she argues that the court erred in failing to allocate childcare expenses between the parties.

## STANDARD OF REVIEW

[1,2] An appellate court's review in an action for dissolution of marriage is de novo on the record to determine whether

there has been an abuse of discretion by the trial judge. *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012). This standard of review applies to the trial court's determinations regarding child support. See *id*. A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Id*.

[3] When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006).

## ANALYSIS

### Calculation of Darren's Monthly Income

In calculating Darren's child support obligation, the district court determined Darren's gross monthly income to be $7,716. While the court did not specifically explain how it determined that amount, it appears that the court utilized Darren's hourly wages along with the amount his employer pays for health insurance in its calculation. Darren earns $33.35 per hour and works 40 hours per week. Accordingly, prior to taxes, Darren earns $5,780.67 per month. The evidence revealed that Darren's employer pays for health insurance premiums for Darren and his daughter. The monthly total of those premiums is $1,935.52. When we add Darren's gross monthly earnings to the amount spent on his health insurance premiums, we get $7,716.19, which is, essentially, the amount the district court calculated for Darren's gross monthly income.

In their respective appeals, both Darren and Michelle challenge the district court's calculation of Darren's income. In his appeal, Darren asserts that the district court erred in including the amount his employer pays for health insurance premiums in its calculation of his monthly income, but failing to then provide him with a deduction or a credit for those

health insurance premiums. Upon our review, we conclude that Darren's assertion on appeal has merit.

[4,5] In calculating a party's child support obligation, a deduction shall be allowed for the monthly out-of-pocket cost to the parent for that particular parent's health insurance so long as the parent requesting the deduction submits proof of the actual cost incurred for health insurance. Neb. Ct. R. § 4-205(F) (rev. 2016). The increased cost to a parent for health insurance for the child shall be prorated between the parents; the parent paying the premium receives a credit against his or her share of the monthly support, provided that the parent requesting the credit submits proof of the cost of health insurance coverage for the child. See Neb. Ct. R. § 4-215(A) (rev. 2011).

At trial, Darren offered into evidence proof of the cost of health insurance for himself and his daughter. This evidence indicated that if Darren were only to insure himself, the monthly premium would total $764.87. Darren also insures his daughter, and as a result, his monthly premium totals $1,935.52. Such evidence demonstrates that the increased cost to Darren for his daughter's health insurance is $1,170.65. Normally, pursuant to the Nebraska Child Support Guidelines, Darren should receive a deduction for the amount he pays to insure himself and a credit for the increased amount he pays to insure his daughter. However, the evidence at trial established that Darren does not actually pay anything out of pocket for the health insurance premiums. Instead, his employer pays all of the monthly premiums as a part of his employee benefits. Accordingly, if we consider only Darren's hourly wages in calculating his income, he would receive neither a deduction nor a credit for the payment of health insurance premiums.

As we discussed above, however, the district court did not consider only Darren's hourly wages in calculating his income. Instead, the court calculated Darren's gross monthly income by adding Darren's hourly earnings to the amount

his employer spends on the health insurance premiums. In doing so, the court imputed the cost of the health insurance premiums as income to Darren. When the court imputed the health insurance premiums as income to Darren, it was required to follow the guidelines to provide Darren a deduction and a credit for the payment of the premiums. If the court had included such a deduction and a credit, however, Darren would actually pay less child support than he would if the employer-paid premiums were not imputed to him as income, even if the imputed income was listed as tax exempt. This is clearly an inequitable result, especially when we consider that the purpose of the guidelines is to determine a proper portion of a person's expendable income to be allocated to child support. No part of the health insurance premium is available to Darren to utilize for other purposes. Upon our review, we conclude that the district court abused its discretion in including in its calculation of Darren's income the health insurance premiums paid by Darren's employer.

Darren's monthly income must be calculated by utilizing only his hourly wages and not the amount his employer spends on the health insurance premiums. This calculation eliminates any need to provide Darren with a deduction or a credit for the health insurance premiums and, as a result, leads to a fair and equitable child support calculation. Based on our calculation, Darren's gross monthly income should total $5,781.

In her cross-appeal, Michelle also challenges the district court's calculation of Darren's monthly income. As a part of her argument, she asserts that the district court erred in including the cost of the health insurance premiums in Darren's taxable income, rather than in his nontaxable income. Given our conclusion that the health insurance premiums should not be included at all in the calculation of Darren's monthly income, we need not address this assertion further.

Michelle also asserts that the district court erred in failing to include all of Darren's "fringe benefits" in the calculation of his monthly income. Upon our review of the record,

we cannot say that the district court abused its discretion in failing to include Darren's benefits in the calculation of his monthly income.

At trial, Darren indicated that in 2016, he received certain benefits, beyond his hourly salary, as compensation for his employment. These benefits included payment of health insurance premiums, monthly payments to a retirement plan, the opportunity to earn overtime, a safety award of $107.63, and paid holiday, vacation, personal, and sick leave. We have already determined that the district court should not include the payment of the health insurance premiums in its calculation of his total monthly income. Additionally, we address Darren's retirement benefits separately in our analysis below. Accordingly, in examining the merits of Michelle's assertion about whether all of Darren's benefits should be included in the calculation of his monthly income, we focus on only Darren's opportunity to earn overtime, his safety award of $107.63, and his paid holiday, vacation, personal, and sick leave.

[6] In calculating child support, the total monthly income of a parent should include earnings "derived from all sources." Neb. Ct. R. § 4-204 (rev. 2016). The guidelines also indicate that in calculating a parent's total monthly income:

> The court may consider overtime wages in determining child support if the overtime is a regular part of the employment and the employee can actually expect to regularly earn a certain amount of income from working overtime. In determining whether working overtime is a regular part of employment, the court may consider such factors as the work history of the employee for the employer, the degree of control the employee has over work conditions, and the nature of the employer's business or industry.

*Id.*

[7] The Nebraska Supreme Court provided further guidance on how to calculate a person's income for child support purposes when it held that a flexible approach should be taken in

determining a person's income for purposes of child support, because child support proceedings are, despite the child support guidelines, equitable in nature. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004). For example, while a court is allowed to add in-kind benefits, derived from an employer or other third party, to a party's income, a court's findings regarding an individual's level of income should not be based on the inclusion of income that is entirely speculative. See, *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006); *Workman v. Workman*, 262 Neb. 373, 632 N.W.2d 286 (2001).

At trial, Darren testified that the overtime and the safety award are not guaranteed to be a part of his salary, but, rather, these benefits are opportunities to earn additional income. There was no evidence to indicate whether Darren regularly earns overtime pay or exactly how much overtime pay he had earned in the months and years preceding the dissolution proceeding. Similarly, there was no evidence about the requirements for earning the safety award or whether this award had previously been earned by Darren and could be considered a regular part of his annual salary.

Based on the limited evidence presented at trial, we cannot say that the district court erred in excluding from its calculation of Darren's income any overtime pay or the amount of the safety award. There is nothing in the record to demonstrate that these benefits are a regular part of Darren's income. The district court did not abuse its discretion in failing to include such speculative income.

We also conclude that the district court did not err in excluding from its calculation of Darren's monthly income his paid holiday, vacation, personal, and sick leave. Again, there is nothing in the record to indicate that these benefits represent anything more than a substitute for Darren's normal hourly earnings when he is unable to work or chooses to take time off from work. There was nothing to suggest that if Darren does not use these benefits, he will receive an additional monetary payout based on the value of the benefit.

Michelle also challenges the district court's calculation of Darren's monthly income based on the court's inclusion of a deduction for Darren's retirement contributions. Upon our review of the record, we conclude that Michelle's assertion in this regard has merit.

[8] In calculating child support, a parent may receive a deduction for contributions to a retirement plan. Section 4-205(C) of the child support guidelines provides that a parent should be given a deduction for

> [i]ndividual contributions, in a minimum amount required by a mandatory retirement plan. Where no mandatory retirement plan exists, a deduction shall be allowed for a continuation of actual voluntary retirement contributions not to exceed 4 percent of the gross income from employment or 4 percent from the net income from self-employment.

In its calculation of Darren's income, the district court included a deduction of $375 for Darren's contribution to a retirement plan. However, the evidence offered at trial revealed that Darren's employer makes monthly payments to a retirement plan for Darren. There is nothing to indicate that Darren makes any out-of-pocket contributions in excess of his employer's contributions. Because there is nothing to support the district court's inclusion of a $375 deduction for Darren's payment to a retirement plan, we conclude that the court erred in including this deduction.

As we mentioned above, Michelle also asserts that the district court erred in not including in its calculation of Darren's income the amount Darren's employer pays toward his retirement plan. We conclude that the district court did not err in this regard. As a part of the division of marital property, the court awarded Michelle a portion of Darren's retirement account. Given this award, we cannot say that the district court abused its discretion in failing to include any future payments to the retirement account as a part of Darren's income. Moreover, moneys paid into a retirement plan do not constitute

income that is readily available for support. Depending on the retirement plan, said employer deposits may be completely unavailable to access by the employee until retired or may be accessible only as a loan which must be repaid. In any event, no evidence was adduced indicating that Darren could gain access to the contributions made by his employer to his retirement plan. Therefore, we find that the employer's contributions cannot be considered as income to Darren for purposes of a child support calculation.

Upon our review, we find that Darren's gross monthly income should be calculated utilizing only his hourly wages. He should not receive a deduction for the payment of his health insurance premiums, nor should he receive a credit for the payment of his daughter's health insurance premiums. He also should not receive any retirement deduction, since he does not make any out-of-pocket contributions to a retirement account.

### Calculation of Michelle's Monthly Income

In her cross-appeal, Michelle also argues that the district court erred in calculating her monthly income for child support purposes. She asserts that the court should have included in its calculation a deduction for the payments she makes to a retirement plan. We find no merit to Michelle's assertions.

As we discussed above, the guidelines provide that a parent may receive a deduction for actual contributions to a retirement plan. See § 4-205(C). However, at trial, Michelle failed to present any evidence to prove that she currently makes contributions to a retirement plan or to prove the amount of any contributions she makes. Michelle testified that one of the benefits provided to her by her employer is a "401K where [the company] matches 3 percent of what I put in there." She also adduced evidence regarding a retirement account she accrued while working for a former employer. Michelle did not provide any further information at trial about whether

she contributed to the retirement account with her present employer or how much she contributes on a monthly basis.

We do note that at the hearing on Darren's motion to alter or amend, Michelle did offer into evidence copies of her paystubs from June to September 2016. Presumably, these paystubs would indicate whether Michelle contributes to a retirement plan and how much she contributes on a monthly basis. However, we decline to consider these paystubs as evidence because Michelle did not make any postjudgment motion to reopen the evidence or for reconsideration of the decree. In fact, after Michelle submitted the paystubs into evidence, she did not even mention the district court's failure to include in its calculation of her income a deduction for her contributions to a retirement plan. Moreover, it appears that Darren's assertions in his motion to alter or amend were based solely on evidence presented at trial. As such, the information Michelle presented at the hearing was not relevant to Darren's motion.

Given the lack of evidence adduced at trial to support Michelle's claim that she is entitled to a deduction for her contributions to a retirement plan, we cannot say that the district court abused its discretion in failing to allow such deduction in its calculation of Michelle's income for child support purposes.

### Child Support Conclusion

Upon our review, we find that Darren's gross monthly income should be calculated utilizing only his hourly wages. He should not receive a deduction for the payment of his health insurance premiums, nor should he receive a credit for the payment of his daughter's health insurance premiums. He also should not receive any retirement deduction, since he does not make any out-of-pocket contributions to a retirement account. Based on our findings, we have recalculated Darren's child support obligation in the child support worksheet attached to this opinion as appendix A. Ultimately, we modify Darren's child support obligation to be $782 per month.

## Allocation of
### Childcare Expenses

Finally, Michelle asserts that the district court erred in failing to allocate childcare expenses between the parties. Upon our de novo review of the record, we find Michelle's assertion has merit.

The guidelines provide the following instructions about how childcare expenses should be treated:

> Childcare expenses are not specifically computed into the guidelines amount and are to be considered independently of any amount computed by use of these guidelines. Care expenses for the child for whom the support is being set, which are due to employment of either parent or to allow the parent to obtain training or education necessary to obtain a job or enhance earning potential, shall be allocated to the obligor parent as determined by the court, but shall not exceed the proportion of the obligor's parental contribution . . . and shall be added to the basic support obligation computed under these guidelines.

Neb. Ct. R. § 4-214 (rev. 2016). At trial, Michelle testified that the parties' daughter attends daycare because both Michelle and Darren work. Michelle did not indicate the cost of this daycare, but she did testify that since at least January 2016, she and Darren have been splitting the daycare costs. Michelle testified that she wanted that arrangement to continue. The district court did not address the parties' childcare expenses in the decree.

Based upon the language in § 4-214, we find that the district court erred in failing to address the parties' childcare expenses in the decree. We remand the cause to the district court for a determination of the allocation of the costs of childcare between the parties.

## CONCLUSION

Upon our de novo review, we conclude that the district court erred in its calculation of Darren's child support obligation.

Specifically, we find that the court erred in calculating Darren's monthly income by adding the amount his employer spends on his health insurance premiums to his hourly earnings and by providing Darren with a $375 deduction for his contribution to a retirement plan. We have recalculated Darren's child support obligation, consistent with our findings, in the child support worksheet attached to this opinion as appendix A. We modify Darren's monthly child support obligation to be $782 per month. We also find that the district court erred by failing to allocate the costs of childcare. We remand the cause to the district court to allocate the costs of childcare between the parties.

Affirmed as modified, and cause
remanded with direction.

(*See page 117 for appendix A.*)

## APPENDIX A

Case Name: <u>Drabbels v. Drabbels</u>

Worksheet 1 - Basic Income and Support Calculation

Mother: Single / 1.5 Exemptions / Not Self Employed
Father: Single / 1.5 Exemptions / Not Self Employed

| Line | Description | Mother | Father |
|---|---|---|---|
| 1 | Total Monthly Income | $3,466.00 | $5,780.00 |
| 1 | Tax-Exempt Income | $0.00 | $0.00 |
| 2.a | Taxes - Federal | $325.73 | $831.04 |
| 2.a | Taxes - Nebraska | $113.05 | $271.32 |
| 2.b | FICA - Social Security | $214.89 | $358.36 |
| 2.b | FICA - Medicare | $50.26 | $83.81 |
| 2.c | Retirement | $0.00 | $0.00 |
| 2.d | Previously Ordered Support | $0.00 | $0.00 |
| 2.e | Regular Support for Other Children | $0.00 | $0.00 |
| 2.f | Health Insurance Premium for Parent | $0.00 | $0.00 |
| | Other Deductions | $0.00 | $0.00 |
| | Child Tax Credit | ($41.67) | ($41.67) |
| 2.g | Total Deductions | $662.26 | $1,502.87 |
| 3 | Net Monthly Income | $2,803.74 | $4,277.13 |
| 4 | Combined Net Monthly Income | $7,080.87 | |
| 5 | Combined Net Annual Income | $84,970.41 | |
| 6 | Each Parent's Percent | 39.6% | 60.4% |
| 7 | Monthly Support from Table (1 Child) | $1,294.00 | |
| 8 | Health Insurance Premium for Children | $0.00 | $0.00 |
| 9 | Total Obligation | $1,294.00 | |
| 10 | Each Parent's Monthly Share | $512.42 | $781.58 |
| 11 | Credit For Health Insurance Premium Paid | ($0.00) | ($0.00) |
| 12 | Each Parent's Final Share (1 Child, rounded) | $512.00 | $782.00 |