IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

PECK V. PECK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JUSTIN K. PECK, APPELLEE,

V.

VICTORIA LYNN PECK, NOW KNOWN AS VICTORIA
LYNN ARROWSMITH, APPELLANT.

Filed November 16, 2021.    No. A-20-919.

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed in part, and in part reversed and remanded with directions.

Timothy M. Schulz, of Yost Law Firm, for appellant.

Avis R. Andrews for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Victoria Lynn Peck, now known as Victoria Lynn Arrowsmith, appeals the order of the Dodge County District Court modifying the decree dissolving her marriage to Justin K. Peck. Victoria contends that the district court abused its discretion in determining that a material change of circumstances occurred warranting a modification of the dissolution decree, specifically dividing final decisionmaking authority between the parties, expanding Justin's parenting time, and ordering Victoria not to move the children from Sarpy County or Cass County without permission of the court or mutual agreement of the parties; calculating child support and awarding Justin an abatement; and awarding Justin $500 in attorney fees. For the reasons set forth herein, we affirm in part, and in part reverse and remand the cause with directions.

## II. STATEMENT OF FACTS

### 1. Previous Proceedings

The parties were married in November 2012. During the parties' marriage, they had twin sons, James Harold Peck and River Dillon Peck, born in 2015. In January 2019, the district court entered a decree dissolving the parties' marriage. The court awarded the parties joint legal custody of James and River with primary physical custody awarded to Victoria. Justin was awarded visitation every other weekend starting at 5 p.m. on Friday until 5 p.m. on Sunday and a weeknight visitation as mutually agreed upon by the parties. The court's child support worksheet listed Justin's total monthly income as $4,506 and Victoria's total monthly income as $1,560 and provided Justin a credit in the amount of $175 per month in health insurance premiums paid for the minor children. Justin was ordered to pay child support in the amount of $1,028 per month which included an adjustment based upon the basic subsistence limitations found in § 4-218 of the Nebraska Child Support Guidelines. The child support order also included a provision that Justin's child support obligation would be abated to 80 percent for the months of June, July, and August. The dissolution decree further provided that Victoria could remove the minor children from Nebraska to Missouri Valley, Iowa. The order and parenting plan provided that if Victoria moved from Missouri Valley, she was required to provide advance notice to Justin, and the parties were required to attempt to resolve issues in mediation prior to returning to the court. Justin appealed to this court; however, on May 31, 2019, his appeal was dismissed at his request.

Less than 1 month later, on June 20, 2019, Justin filed a complaint to modify the parties' dissolution decree seeking legal and physical custody of the parties' two minor children, or in the alternative, that he be awarded joint legal and physical custody.

In October 2019, the district court entered a temporary order modifying Justin's parenting time to include every other weekend from 5 p.m. on Friday until Monday "when [Justin] shall deliver the minor children to preschool." On the alternating week, Justin's weekday parenting time was modified to specify that it was to occur from 5 p.m. to 8 p.m. in Bellevue, Nebraska, where Victoria had moved. The parties were ordered to comply with all other terms of the original decree.

### 2. Modification Hearing

The modification hearing was held in February and August 2020. Witnesses at the hearing included Victoria; Justin; Alicia Hilker, Justin's friend; and Renee Peck, Justin's mother. The following is a summary of evidence adduced at the hearing governing the status of the parties and their children.

### (a) Justin

From the time of the original dissolution to the time of the modification hearing, Justin has resided in Fremont, Nebraska, renting his home from his parents with the expectation that he would purchase the home at a later date. At the time the decree was entered, Justin was employed in Omaha, Nebraska, and also working in the Navy Reserves for which he provided income verification to the court. His income was calculated at $4,506 monthly. Justin's enlistment ended in January 2020, and he no longer receives income from that source. Beginning

in January after the decree was entered, Justin took another job in Omaha making $30.26 an hour. He then received a raise on or about July 2020. At the time of the modification, Justin's monthly income was calculated at that rate totaling $5,385. Starting in January 2020, Justin stated that he provided health care coverage for the children through his new employment. This coverage was provided so long as Justin paid his monthly union dues in the amount of $36.25. Justin indicated that his monthly dues would not change if only he, and not the children, were covered under the policy. Justin stated that the amount he pays to cover himself or the children is not calculated separately. However, Justin testified that he timely paid his union dues throughout the course of his employment.

### (b) Victoria

At the time of the original divorce decree Victoria was living in Missouri Valley and was attending physical therapy school. She testified that she eventually discontinued her schooling due to the difficulty she encountered in parenting and attending school at the same time. At the time the original decree was entered, Victoria was unemployed, and her income for the child support determination was calculated at the minimum wage of $9 per hour. At the time of the modification trial, Victoria had remarried and moved in with her husband in Bellevue. She testified that the timing of their move related to flooding of her Iowa home which she documented in a letter to Justin dated March 28, 2019.

Upon moving to Bellevue, Victoria obtained employment as an appointment scheduler earning $13 per hour. She worked between the hours of 8:30 a.m. and 4:30 p.m. and utilized her husband, brother, parents, and grandparents to assist in providing childcare during her working hours. Victoria quit this job after about 2 months to be a full-time mother. Victoria testified that shortly thereafter, she began a 14-month cosmetology program. Upon completion of the program, Victoria testified that she assumed she would earn at least $13 per hour.

Victoria testified that the two children receive health care coverage through Tricare as dependents of Victoria's husband. She further testified that she and her husband recently made an offer on a home in Plattsmouth, Nebraska, and were awaiting final approval by the Veteran's Administration.

### (c) Children

Both parties and the district court agreed that the children currently have a positive home life, are receiving appropriate medical care, are active in church, attend school and perform well, and actively engage in activities. At the time of trial, James was participating in dance and both boys were expected to play baseball for the team that Justin would be coaching. When Victoria moved to Bellevue, the boys were enrolled by both parents in preschool at Chandler View Elementary School. The parents both attended the open house and subsequent parent-teacher conferences at the school. Justin participated in visitation as ordered in the decree. Both parties provided transportation to and from visitation during this time. At times, both parties appear to have been unwilling to accommodate the other for extra visitation; however, on other occasions they accommodated each other's requests. Justin attends medical appointments scheduled by Victoria for the children when he is available to do so. The parties agreed that they communicate

regularly and are cordial with each other on most occasions. The evidence indicated that both parties have adequate support systems with friends and family.

### 3. DISTRICT COURT ORDER

At the close of the evidence, the court took the matter under advisement for 20 minutes and then provided an oral ruling regarding the modification of custody and support. In statements made from the bench, the district court found that there was sufficient evidence showing a material change in circumstances occurred which warranted a modification of the original dissolution decree. Specifically, the court determined that there was a material change in circumstances relating to Victoria's relocation from Missouri Valley to Bellevue with the expectation of closing on a home in Plattsmouth. Additionally, the court found that there was a material change in circumstances as it related to the parties' income because Victoria was not working and Justin's income had increased. Victoria's income at the time of the decree was calculated by the court utilizing an earning capacity of $9 per hour even though she was unemployed. Victoria later obtained employment earning $13 per hour upon moving to Nebraska. Following the modification trial, the court calculated Victoria's earning capacity at $13 per hour which was consistent with her wage rate in her former job and consistent with the amount she testified she could earn upon completion of the cosmetology program. Justin's income at the time of the decree was calculated using his earnings from his prior employment and his pay from the Navy Reserves. Because Justin had obtained new employment after the decree, the court calculated his income utilizing his current earnings at the rate of $31.07 per hour.

The court found that it was in the best interests of the children for the parties to continue sharing joint legal custody with physical custody remaining with Victoria. However, the court modified the original dissolution decree to provide that Victoria would have final decisionmaking authority relating to the children's education, medical, and dental treatment, and Justin would have final decisionmaking authority regarding activities and religion.

The court provided that if Victoria changes the children's school, hair color, or paints their fingernails, Justin must be notified, and the parties are to discuss those changes. The parties are to indicate during phone calls or video calls if they are unable to answer. The court stated that "these parents, both [Victoria] and [Justin], need to communicate . . . . A call at the golf course, a text message, that's probably not sufficient."

The court also ordered that Victoria must receive court approval or mutual agreement by Justin if she intends to move from Sarpy or Cass County. The judge orally stated as follows: "if she moves from Sarpy or Cass County, she's going to have to come back to this Court, unless it's mutually agreed to. So, there's not going to be any moves to the ocean, to Missouri Valley anymore, anything like that without the Court's approval unless you agree to it."

Justin's parenting time was increased to include every other weekend from 6 p.m. on Friday to 9 a.m. on Monday with exchanges to occur at a fast food restaurant in Omaha. Justin's parenting time also included one overnight visit per week from 6 p.m. on Wednesday to 9 a.m. on Thursday and summer visitation including the first full week in May, all of June and July, and the first full week in August. Virtual contact with the other parent was to occur on Tuesdays and Thursdays.

In determining child support, the court stated that it used Victoria's earning capacity and Justin's actual income and provided a $215 reduction for the children's health care expenses for Justin. The court stated that: "Under my equitable powers I can do that. He gets a reduced rate because he is in the union because you do not get to be in the union for no reason. So, I put it at a $215 credit for that." The court also deviated from the Child Support Guidelines by ordering that Justin was to receive a 20 percent reduction in child support for the entire year due to his extended parenting time during the summer months. All other matters in the parenting plan were ordered to remain the same. The court stated:

> It is my hope that I don't see the parents here again. I don't think it's a bad thing that the children spend more time with [Justin]. He seems to be a good guy. [Victoria,] you need to not look at it as a contest of who gets more. It's about co-parenting. These are two boys; they need a dad.

The court also ordered Victoria to pay $500 of Justin's attorney fees based upon the court's finding that the lawsuit could have been prevented or made shorter if "there was better planning and stability. And I think that [Justin] should not have to [bear] the additional expense of that." The court further stated to Victoria "You're lucky it's only $500. It could have been much more. They prayed for more than that." Victoria has timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Victoria's assignments of error, consolidated and restated, contend that the district court abused its discretion in (1) finding that there was a material change in circumstances warranting a modification of the January 2019 decree, specifically as it related to a material change as to the relocation from Missouri Valley to Bellevue; dividing final decisionmaking authority for activities, religion, education, medical, and dental treatment for the children despite continuing the original dissolution decree's award to the parties of joint legal custody of the minor children; expanding Justin's parenting time; and ordering Victoria not to move the children from Sarpy County or Cass County without permission of the court or mutual agreement of the parties; (2) calculating child support under the Nebraska Child Support Guidelines and awarding an abatement due to the expansion of the Justin's parenting time; and (3) awarding Justin $500 in attorney fees.

## IV. STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021); *VanSkiver v. VanSkiver*, 303 Neb. 664, 930 N.W.2d 569 (2019). A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004).

In an appeal of an equity action, the court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Weaver v. Weaver, supra*. In a review de novo on the record, an appellate court reappraises the evidence as

presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Id*. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014); *Pearrow v. Pearrow*, 27 Neb. App. 209, 928 N.W.2d 430 (2019).

V. ANALYSIS

(1) MATERIAL CHANGE OF CIRCUMSTANCES

Victoria's first assigned error relates to the district court's determination that a material change in circumstances occurred here which warranted a change to the court's original decree. She contends that the district court erred in determining that there was a material change in circumstances which supported changes in the original legal custody arrangement, parenting time, or the court's statements governing future moves. In her brief, Victoria argues that her relationship with the children has remained unchanged since the time of the original decree, that moving to Bellevue was not a material change nor did it negatively impact Justin, that the court was aware of the move to Bellevue at the time of the temporary order and still ordered sole physical custody with Victoria, that it is more favorable to Justin that she and the children live in Bellevue because Justin works in Omaha, and that the children's safety and welfare needs are being met.

A custody modification involves a two-step process: First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances has occurred after the entry of the previous custody order which affects the best interests of the child; second, the party seeking to modify must show that a modification is in the best interests of the child. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020). A material change in circumstances "is the occurrence of something which, had it been known to the marital dissolution court at the time of the initial decree, would have persuaded the court to decree differently." *Weaver v. Weaver*, 308 Neb. 373, 391, 954 N.W.2d 619, 632 (2021). The finding of a material change of circumstances is a prerequisite to a modification of a child custody award. *Weaver v. Weaver, supra*. Absent a material change of circumstances, a custody order will not be modified. *Id.* This supports the rationale of avoiding repetitive litigation that can be unnecessary and harmful to a child's life. *Id*.

In his complaint, Justin alleged that in the 6 months following the court's prior decree, a material change of circumstances had occurred in the following respects: (1) Victoria failed to provide a stable environment for the children, (2) she returned to Nebraska and notified Justin that she wanted to move to the west coast, (3) she failed to provide for the safety of the children, (4) she failed to meet the children's financial needs, (5) she exhibited increasingly unstable behavior, (6) she failed to respond to Justin's request for mediation, and (7) each party had a change in income. Following a hearing on that complaint, notwithstanding the district court's finding that the children have a healthy, stable, and safe home life, the court found that there was a material change in circumstances which justified a change in legal custody arrangements,

- 6 -

parenting time, and child support. More specifically, the district court found that a material change of circumstances occurred (a) due to Victoria's move from Missouri Valley to Bellevue with the expectation to move into a home in Plattsmouth and (b) the parties' changes in income. We will analyze those findings independently.

(a) Changes in Residence

The first basis upon which the district court determined a material change had occurred since the original decree related to Victoria's changes in residence. Specifically, the court found that Victoria's move from Missouri Valley to Bellevue, when coupled with her future plans to move to Plattsmouth constituted a material change in circumstances warranting changes to the original decree.

As the Nebraska Supreme Court stated in *Schrag v. Spear*, 290 Neb. 98, 105, 858 N.W.2d 865, 873 (2015):

> We have previously observed that parental relocation cases are "among the most complicated and troubling" cases that courts must resolve. This is so because of the competing and often legitimate interests of the parents in proposing or resisting the move, and because courts ultimately have the difficult task of weighing the best interests of the child at issue "which may or may not be consistent with the personal interests of either or both parents." In these cases, courts are required to balance the noncustodial parent's desire to maintain their current involvement in the child's life with the custodial parent's chance to embark on a new or better life. It is for this reason that such determinations are matters initially entrusted to the discretion of the trial judge, and the trial judge's determination is to be given deference.

The court's statement in *Schrag* is made in reference to relocation jurisprudence governing the removal of a child from this state. The instant case does not present an issue of the removal of children from Nebraska. It presents an issue of return to Nebraska. More specifically, in connection with the initial decree where Victoria was provided sole physical custody, Victoria requested and obtained permission from the district court to move with the children to Missouri Valley. In the parenting plan incorporated into the original dissolution decree, the court instructed that "[i]n the event the custodial parent plans to change the residence of the minor children from Missouri Valley, Iowa, the custodial parent shall give advance notice of such change of residence to the noncustodial parent," followed by specific provisions governing the timing of that notice and an opportunity to mediate issues which might relate to custody, parenting time, visitation, and other access. There is no question that Victoria provided notice of her intended move and the parties disputed why attempts to mediate any consequences failed. Having not agreed to factors which could be implicated by the move, Justin filed a modification complaint seeking to change custody and parenting time arrangements and the court made certain modifications based upon its findings.

The Nebraska Supreme Court has never applied its relocation jurisprudence to a return of a child to this jurisdiction and we are not suggesting that a full removal analysis should apply. Instead, we are confronted with the issue of whether Victoria's return to Bellevue from Missouri

Valley amounted to a material change in circumstances as that term has been defined, and, on this record, we hold that it did not.

Contrary to the district court's conclusions here, although we recognize that moving and relocating, whether interstate or intrastate, can present complicated and troubling scenarios for the parents and children, we view the scenario presented in the instant case as neither complicated nor troubling because it does not appear to pit competing interests of the parents, nor suggest of adverse consequences to the parties' minor children.

Justin's complaint to modify came only 6 months after the court entered its original decree. At that time, Victoria was awarded custody, was living in Missouri Valley, was unemployed, and was attending school. The record reveals that subsequent to that decree being entered, she moved to Bellevue to live with her future husband following a flooding event in Missouri Valley which impacted her home. The record further reveals that after their marriage, Victoria and her husband decided to move to a larger home in Plattsmouth. But unlike exigencies created by moves in some cases, we fail to see adverse consequences to Justin or the children as a result of Victoria's decisions here.

First, at the time Victoria moved to Bellevue, the children had not been enrolled in school due to their young ages, so the move had no disruptive impact on their educational pursuits. In fact, both Justin and Victoria executed enrollment paperwork for the children to attend preschool in Bellevue and testified that the children were doing well in preschool. Second, Victoria's move to Bellevue to live with her future husband demonstrates a natural progression in her relationship and afforded her the opportunity to stop working, by choice, so as to be more available for her children. Third, there was evidence provided by both parties on how well the children were doing. According to the record, both boys were healthy, were up-to-date on their medical appointments, were able to participate in activities with both parents including, but not limited to, trips to the park, the zoo, and the parents' respective churches. Further, there was no evidence which even suggested that Victoria's new husband was a cause for concern as it relates to the children. As the district court noted in its pronouncements from the bench, "[the children are] healthy. For all [indications] they're doing good" and "It sounds like [the children] have a positive home life." Fourth, Victoria's move from Missouri Valley to Bellevue (eventually to Plattsmouth if that move occurs) appears to have had no adverse impact on Justin who lives in Fremont and works in Omaha. The evidence indicated that the distance between Fremont, where Justin lives, and Missouri Valley and Bellevue or Plattsmouth was roughly the same and closer to Justin's primary work location in Omaha. In short, we fail to see how Victoria's moves here created competing interests in relation to Justin or the children or in any way adversely impacted Justin's ability to maintain his relationship with the children. And finally, as it relates to Victoria's request to move with her husband and children to a bigger house in Plattsmouth, even the district court agreed that the move would provide a better school system for the children while not suggesting of any adverse impact on Justin or the children.

We view Victoria's change in residence to Bellevue followed by her request to move to Plattsmouth as consistent with, and motivated by, improvement of quality of life, employment, marriage and the needs of the children with no corresponding adverse impact on Justin or the children. As such, we hold that the district court abused its discretion in finding that Victoria's

change in residences constituted a material change in circumstances which warranted modification of the custody arrangement under the original decree.

## (b) Change in Income

The district court's second basis for finding that a material change in circumstances occurred was due to the parties' change in income. Although we agree that a material change in income occurred here warranting a modification of child support as discussed in the next section of this opinion, we fail to see how a change in income warrants a modification of the original child custody arrangement. The district court appeared to use this factor as an additional justification for making changes to the original joint legal custody arrangement and parenting time for Justin, and for its admonition to Victoria to not make future moves from Sarpy County or Cass County without seeking permission from the court. To the extent that the district court was separately utilizing the parties' change in income as a basis to modify the decree to change custody, we find the court abused its discretion in doing so. As such, because we have found there was no material change in circumstances to justify modifying the decree as it relates to custody, we hold that the court abused its discretion in modifying provisions in the original decree governing joint custody and parenting time. And as to the court's admonition as to future moves within the State of Nebraska, the Nebraska Supreme Court has held within the context of removal jurisprudence, "an award of custody to a parent should not be interpreted as a sentence to immobility." *State on behalf of Riley G. v Ryan G.*, 306 Neb. 63, 75, 943 N.W.2d 709, 719 (2020). The parties have not directed us to any caselaw which provides the district court with authority to restrict intrastate moves without advance permission from the court and our independent research has uncovered none. This is not to say future moves could not result in a material change in circumstances as it relates to relevant inquiries in connection with our modification jurisprudence; however, we hold the district court abused its discretion in requiring Victoria to acquire permission from the court prior to making a move in the manner the district court fashioned the order here.

## (2) CHILD SUPPORT CALCULATION

Next, although Victoria does not contend that the court erred in finding a material change in circumstances occurred which warranted a change in Justin's child support obligation, she does contend that the district court erred in calculating child support under the Nebraska Child Support Guidelines and awarding an abatement due to the expansion of Justin's parenting time.

Victoria first contends that the court erred when it calculated her income utilizing an earning capacity at $13 per hour despite her unemployed status at the time of the modification. She alleges that this calculation was speculative and unfair. We disagree.

Neb. Ct. R. § 4-204 states that the earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities. The use of earning capacity in calculating child support is useful when it appears that the parent is capable of earning more income than is presently being earned. *Roberts v. Roberts*, 25 Neb. App. 192, 903 N.W.2d 267 (2017). A court may deviate from the guidelines, but only if it specifically finds that a deviation is warranted based on the evidence. *Id*. Without a clearly articulated justification, any deviation from the

guidelines is an abuse of discretion. *Id.* The deviation must be specifically stated in its order or the court must complete and file worksheet 5. *Id*.

Victoria testified to earning $13 per hour as an appointment scheduler and that she would "assume" she would make at least $13 per hour at the time she completed her cosmetology program. Although she is currently unemployed, history has shown she is capable of earning $13 per hour, is currently obtaining education that will likely allow for earnings of at least that much, and has the opportunity and present ability and apparent desire to obtain future employment. Although at the time of the modification trial Victoria had chosen to be a stay at home parent, her current status did not necessitate a child support calculation at a rate lower than what she testified she was capable of earning before she made that choice and what she believed she would make upon completion of the cosmetology program in which she was presently enrolled. Having chosen to pursue the cosmetology program while currently conducting herself as a stay-at-home mother, we cannot say that the prospect of future employment was speculative or unfair. Following our de novo review of the record, we find that the district court's calculation of Justin's child support obligation utilizing Victoria's earning capacity calculated at the rate of $13 per hour is consistent with the guidelines. Accordingly, Victoria's claim that the court erred in assessing her earnings utilizing this earning capacity fails.

Victoria next contends that the district court erred in awarding Justin a $215 credit to his child support obligation for his contributions to the children's health insurance premiums. In its pronouncement from the bench, the district court stated it awarded Justin a $215 credit on his child support obligation for his contributions to the children's health insurance premiums. In doing so, the district court stated, "I gave him some health insurance for the children. Under my equitable powers, I can do that."

Section 4-215 of the Child Support Guidelines provides:

The increased cost to the parent for health insurance for the child(ren) of the parent shall be prorated between the parents. When worksheet 1 is used, it shall be added to the monthly support from line 7, then prorated between the parents to arrive at each party's share of monthly support on line 10 of worksheet 1. The parent requesting an adjustment for health insurance premiums must submit proof of the cost for health insurance coverage of the child(ren). The parent paying the premium receives a credit against his or her share of the monthly support. If not otherwise specified in the support order, "health insurance" includes coverage for medical, dental, orthodontic, optometric, substance abuse, and mental health treatment.

The Nebraska Supreme Court ruled that parents claiming a deduction for health insurance must present evidence of the amount paid for the children.

[T]he parent claiming a deduction for health insurance must show that he or she has incurred an increased cost to maintain the coverage for the children over what it would cost to insure himself or herself. The party claiming the deduction must show how much of the health insurance premium is attributable to the children.

*Noonan v. Noonan*, 261 Neb. 552, 565, 624 N.W.2d 314, 325 (2001).

Contrary to the district court's finding here, Justin provided no evidence that he paid a premium on behalf of the children and even expressly indicated that he paid no increase in premium on the children's behalf under his new employment arrangement. Having failed to offer proof of paying health insurance premium costs on behalf of the children, the court erred in using a $215 payment and credit on lines 8 and 11 of worksheet 1.

Victoria next argues that court erred in determining Justin's retirement deduction in calculating his monthly child support obligation. In its calculation, the court provided Justin with a 4 percent deduction for retirement contributions on line 2.c. of worksheet 1.

Section 4-205 of the Child Support Guidelines provides:

The following deductions should be annualized to arrive at monthly net income:

. . . .

(C) Retirement. Individual contributions, in a minimum amount required by a mandatory retirement plan. Where no mandatory retirement plan exists, a deduction shall be allowed for a continuation of actual voluntary retirement contributions not to exceed 4 percent of the gross income from employment or 4 percent from the net income from self-employment.

This court has previously required evidence to be presented at trial in order to receive the 4 percent deduction for retirement contributions. *Drabbels v. Drabbels*, 25 Neb. App. 102, 902 N.W.2d 705 (2017) (finding that parent failed to present evidence that she currently makes contributions to a retirement plan or to prove amount of contributions made and therefore deduction was improper).

The district court provided both parties with a retirement deduction of 4 percent of gross income but did not make any specific findings of fact relating to this deduction. Neither party provided the district court with evidence relating to a mandatory retirement plan, nor was there evidence submitted regarding actual voluntary retirement contributions. Although Justin submitted paystubs, there is no indication that any contribution is being made to a retirement plan on the deductions page. Additionally, no testimony was provided that either party is enrolled in a retirement plan or would become enrolled in one. Accordingly, we hold the district court erred in providing a retirement deduction on line 2.c. of worksheet 1. And although Justin did not cross-appeal the issue of the court erroneously allowing a retirement deduction for Victoria, we find the inclusion of that deduction without direct evidence of contribution to be plain error.

Lastly, Victoria contends that it was an error to order a yearlong abatement of the child support due to the additional parenting time awarded to Justin under the modified custody arrangement. We agree. Because we found that there was no material change in circumstances warranting a modification of custody and parenting time, as provided above, we additionally find that it was an error for the court to adjust the child support award to account for the award of additional time. Therefore, due to the court improperly awarding additional parenting time, the change in support based on that award is likewise improper and the yearlong abatement is reversed.

Based upon the aforementioned determinations, we find that the court's calculation of Justin's monthly child support obligation was in error. Accordingly, we reverse the district court

regarding its determination as to the revised child support obligation and remand for the district court to recalculate the child support obligation after removing the retirement deduction, health insurance credit, and yearlong abatement.

### (3) ATTORNEY FEES

Victoria's final assignment of error is that the district court abused its discretion in awarding Justin $500 in attorney fees.

Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. G*arza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014); *Schriner v. Schriner*, 25 Neb. App. 165, 903 N.W.2d 691 (2017). A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases, modification actions, or other cases involving domestic relations. See, Neb. Rev. Stat. § 42-351(1) (Reissue 2016); *Garza v. Garza, supra*.

Here, having determined that the district court abused its discretion in determining that a material change of circumstances existed warranting a change in the parties' custody arrangement, Justin did not prevail at the district court level on most of his claim. And although we find some alteration to Justin's child support obligation was warranted, said alteration resulted in only a slight increase to Justin's child support obligation. We find that the district court abused its discretion in ordering Victoria to pay $500 of Justin's attorney fees.

### VI. CONCLUSION

In sum, we conclude that the district court abused its discretion in determining that a material change of circumstances existed warranting the modification of the custody, parenting time, and final decisionmaking authority. Accordingly, we reverse the district court's order modifying the legal custody of the minor children adjusting final decisionmaking authority and modifying parenting time. We further find that the district court abused its discretion in prohibiting Victoria from leaving Sarpy or Cass County without the district court's permission or by Justin's agreement and reverse and vacate that portion of the modification decree. We further reverse and vacate the district court's award of attorney fees payable by Victoria to Justin. Finally, although the court properly determined that a modification of child support was warranted, we reverse the court's determination of child support and remand for the district court to recalculate the child support obligation after removing the retirement deduction, health insurance credit, and yearlong abatement.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.